LAW OFFICE OF FRANCIS J. FLYNN, JR.
Francis J. "Casey" Flynn, Jr.
422 South Curson Avenue
Los Angeles, California 90036-3169
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES OF AMERICA
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JEREMIAH DELGADO, individually and on behalf of all others similarly situated<br><br>Plaintiff(s),<br><br>v.<br><br>AMAZON.COM, INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **BREACH OF EXPRESS WARRANTY UNDER THE MAGNUSON MOSS WARRANTY ACT**<br>(2) **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.***<br>(3) **VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.**<br>(4) **VIOLATION OF THE CALIFORNIA FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Jeremiah Delgado (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby bring Plaintiff's Class Action Complaint against Amazon.com, Inc., (hereinafter referred to as "Defendant" or "Amazon", alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

## STATEMENT OF JURISDICTION & VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), because (a) the aggregated claims of the putative members of each of the Classes exceed $5 million, exclusive of interest and costs; (b) there are at least 100 members in each Class; and (c) at least one of the members of each of the proposed Classes is a citizen of a different state than Defendant.

2.    This Court has personal jurisdiction over Defendant because Defendant, directly or through an agent, has transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of California such that it reasonably anticipated being subject to personal jurisdiction before the courts of this State.  Defendant's agents have advertised, marketed, and/or sold USB Flash Drives in California, including in this District.  Defendant has sufficient minimum contacts with this State, and/or sufficiently availed itself to the markets of this State through its advertising, marketing, and sale within this State to render the exercise of jurisdiction by this Court permissible.  Further, this

2

Court has personal jurisdiction over Defendant because its Internet websites allow consumers to order and ship products anywhere in the United States, including this District. Defendant conducts business throughout the United States, including this District.

3.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and Defendant has transacted substantial business within this District within the meaning of 28 U.S.C. § 1391, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District. Venue is also proper pursuant to 1781(d)  because this Action being filed in the District Court located in the county where the transaction or any substantial portion thereof occurred.  *See*, **Exhibit A**, Venue Affidavit of Jeremiah Delgado.

## I.     INTRODUCTION

4.     This case challenges Defendant's practice of selling counterfeit glucosamine sulfate supplements. Simply stated, these products are marketed as glucosamine sulfate when, as a matter of fact, no glucosamine sulfate is found in the products.

5.     Plaintiff brings this class action on behalf of himself and all purchasers in California against Defendant of any products sold and/or supplied by Defendant that represent on their labeling that they contain Glucosamine Sulfate ("Glucosamine Sulfate Products"), for breach of express warranty, violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*

3

*seq.*; violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* regarding its unfair, unlawful, unethical fraudulent, misleading, unconscionable, and/or deceptive sales and/or marketing of its Glucosamine Sulfate containing Supplements ("Glucosamine Sulfate Products") (the "California Class"). Plaintiff also brings this class action on behalf of himself and all purchasers nationwide of Defendant's Glucosamine Sulfate Products for breach of warranty and unjust enrichment.

6.     The dietary supplement market in this country is massive, with consumers spending billions of dollars every year on these products. Glucosamine is one of the most commonly purchased dietary supplements, with annual revenue in the hundreds of millions of dollars.

7.     Glucosamine typically comes in two formulations: glucosamine sulfate ("Glucosamine Sulfate") and glucosamine hydrochloride ("Glucosamine Hydrochloride").

8.     Glucosamine Sulfate is clinically preferred and is believed to be more effective, and, accordingly, consumers typically choose Glucosamine Sulfate. It therefore sells for more than other glucosamine products.

9.     Simply stated, Amazon is selling dietary supplements that are not what they claim to be.

## II.     PARTIES

4

**A. Plaintiff**

10.    Plaintiff Jeremiah Delgado ("Plaintiff") is a citizen of the state of California, residing in Orange County, California.  Plaintiff purchased a bottle of Solimo Glucosamine Sulfate 2KCl 1000mg, a dietary supplement manufactured, marketed, and/or sold by Defendant.



11.    Plaintiff purchased the dietary supplement "Glucosamine Sulfate 2KCl 1000 mg".    The product is marketed as "Glucosamine Sulfate 2KCl 1000 mg". Defendant represents in writing that each two-capsule serving contains 1000mg of Glucosamine Sulfate. However, laboratory testing confirms that the product Plaintiff purchased does not, in fact, contain any Glucosamine Sulfate.

**B.    Defendant**

12.    Defendant Amazon.com, Inc. is incorporated in the State of Delaware and has its principal place of business in the State of Washington. Defendant manufactures, markets and sells various Solimo and 365 Everyday Value dietary supplements to consumers nationwide.

5

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13.    Glucosamine is a popular dietary supplement that consumers generally take in order to preserve joint health or to help treat the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis.

14.    Glucosamine supplements are commercially available in the forms of Glucosamine Sulfate, Glucosamine Hydrochloride, and N-acetyl glucosamine. Glucosamine Sulfate has demonstrated clinical effectiveness for certain conditions, while other forms of glucosamine have not.  Indeed, the Mayo Clinic explicitly notes that "[t]hese supplements are not considered interchangeable."[1]

15.    Thus, the common perception of Glucosamine Sulfate is that it performs better than Glucosamine Hydrochloride or placebo treatments.

16.    Accordingly, retailers such as Defendant promote Glucosamine Sulfate over Glucosamine Hydrochloride.

### C. The Dietary Supplement Industry Has Taken Advantage of the Lack of Regulation to the Detriment of Consumers

17.    Dietary supplements fall under the umbrella of food, not drugs.[2] Therefore, dietary supplements are not subject to the Federal laws or strict United States Food and Drug Administration (FDA) regulations that apply to drugs. While supplement manufacturers are subject to certain provisions of the Dietary

---

[1] See https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 as accessed December 14, 2020.

[2] 21 U.S.C. § 321(ff)(1)(C). For purposes of the Federal Food, Drug, and Cosmetic Act, "a dietary supplement shall be deemed to be a food…." *Id*. § 321(ff).

CLASS ACTION COMPLAINT
Case No.:

Supplement Health and Education Act of 1994 ("DSHEA"), dietary supplement firms are not required to prove to the FDA that their products work or are safe before they sell them.[3] Rather, manufacturers of a "product … intended to supplement the diet that bears or contains […] (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)"[4] and/or "means a product that is labeled as a dietary supplement" are generally left to self-police their compliance with DSHEA.

18. 21 U.S.C. § 343(s) provides that a food "shall be deemed to be misbranded" if it is a dietary supplement and fails to list "the name of each ingredient" in the dietary supplement, the "quantity of each such ingredient," or "the label or labeling of the supplement fails to identify any part of the plant from which the ingredient is derived," or, if the supplement is either covered by the specifications of an official compendium, is represented as conforming to the specifications of an official compendium, and fails to so conform, or, for supplements that aren't covered by an official compendium, if it "fails to have the identity and strength that the supplement is represented to have."

---

[3] http://articles.chicagotribune.com/2012-06-30/news/ct-met-supplement-inspections-20120630_1_dietary-supplements-inspections-american-herbal-products-association/2
[4] 21 U.S.C. § 321(ff). For purposes of the Federal Food, Drug, and Cosmetic Act, "a dietary supplement shall be deemed to be a food […]" *Id.* § 321(ff).

CLASS ACTION COMPLAINT
Case No.:

19.    21 U.S.C. § 342(g)(1) provides that a food shall be deemed to be adulterated "[i]f it is a dietary supplement and it has been prepared [or] packed … under conditions that do not meet current good manufacturing practice regulations…."

20.    Current implementing regulations promulgated by the FDA under DSHEA require dietary supplement manufacturers, packagers, and labelers ("Manufacturer") to "implement a system of production and process controls that covers all stages of manufacturing, packaging, labeling, and holding of the dietary supplement to ensure the quality of the dietary supplement…."

21.    Manufacturers must establish "component specifications … to ensure … the purity, strength and composition of dietary supplements manufactured using the components…."

22.    Manufacturers are required to test each component used in the manufacture of dietary supplements, including on each incoming shipment of components prior to their use in the manufacture of dietary supplements,22 and again on each finished batch.

**Amazon represents that the Affected Products are What they Purport to Be.**

23.    Defendant makes representations on the labels of each of the following dietary supplement products – Glucosamine Sulfate ("Affected Products") – regarding the ingredients in the Affected Products.

24.    A Solimo Label is reproduced below:

8



25.     Throughout the Class Period, the packaging for Defendant's products has consistently included "Supplement Facts" representing that each capsule contains a specific amount of a particular supplement.

26.     Defendant's Glucosamine Sulfate 2KCL 1000 mg product is represented to contain 1000 milligrams of "Glucosamine Sulfate Potassium Chloride" per serving.

27.     The "Supplement Facts" for this product also list Ingredients as follows: "Glucosamine Sulfate Potassium Chloride, Povidone, Microcrystaline Cellulose, contains 2% or less of carboxymethlcellulos, magnesium stearate, polydextrose, polyethylene glycol, polyvinyl alcohol, silica, talc, titanium dioxide (color). Contains: Crustacean Shellfish (crab, shrimp)."

28.     A reasonable consumer would expect, as Plaintiffs did, that the label statements regarding the identity, quantity, and purity of the Affected Products would be truthful and not deceptive or misleading.

CLASS ACTION COMPLAINT
Case No.:

**Plaintiffs and the Class and Subclass Would
Not Have Purchased the Affected Products Had They Known the Truth.**

29.     Defendant failed to disclose on its labels or otherwise that the Affected Products do not contain the ingredients represented on the Affected Products' labels or that the Affected Products contain adulterants or undisclosed substances.

30.     The actual contents of the Affected Products are important to Plaintiff and members of the Class and Subclass. Defendant's failure to disclose that the Affected Products do not contain the ingredients as represented on the labels and that the Affected Products contain adulterants or undisclosed substances affected Plaintiff's and Class and Subclass members' purchasing decisions in that they would not have purchased the Affected Products had Defendant disclosed the true facts concerning their actual ingredients and composition.

31.     Defendant recognizes or should have recognized the materiality and importance of the quality and safety of its products to its customers.

32.     Plaintiffs and the Class and Subclass were misled and deceived by Defendant's material misrepresentations and/or omissions and were damaged and injured as a result of Defendant's conduct because:

a.     They would not have purchased the Affected Products had they known that the Affected Products did not contain the ingredients as represented on the labels, and/or contained adulterants or undisclosed substances; and/or

CLASS ACTION COMPLAINT
Case No.:

b.    They did not receive the benefit of the bargain and/or suffered out of pocket loss due to the misrepresentations and omissions in the Affected Products' labeling, as described above; and/or

c.    The Affected Products were worthless and had no value due to Defendant's misrepresentations, omissions, untrue, misleading, unethical, unfair, and/or deceptive statements  and mislabeling, as described above.

33.    Plaintiff and the Class and Subclass would not have purchased the Affected Products had they known the truth.

34.    Defendant failed to disclose on its labels or otherwise that the Affected Products do not contain the ingredients represented on the Affected Products' labels or that the Affected Products contain adulterants or undisclosed substances.

35.    The actual contents of the Affected Products are important to Plaintiffs and members of the Class. Defendant's failure to disclose that the Affected Products do not contain the ingredients as represented on the labels and that the Affected Products contain adulterants or undisclosed substances affected Plaintiffs' and Class members' purchasing decisions in that they would not have purchased the Affected Products had Defendant disclosed the true facts concerning their actual ingredients and composition.

**V.    PLAINTIFF'S EXPERIENCE WITH DEFENDANT'S PRODUCT**

36.    Defendant sells products that are represented to include Glucosamine Sulfate to the public in California and nationwide, through Amazon.com and at Whole Foods Markets.

37.    Defendant's various Glucosamine Sulfate Products include those sold under the Solimo and 365 Everyday Value brands.

38.    Defendant's Glucosamine Sulfate products prominently display the words "Glucosamine Sulfate" on the front of label, in addition to the Supplement Facts panel.  As such, a reasonable person would believe that the product contains Glucosamine Sulfate in particular.

39.    At various times in the past, Plaintiff purchased Amazon's Solimo-branded Glucosamine Sulfate. He did so in reliance on the accuracy of its label, and specifically Defendant's representation that it contained Glucosamine Sulfate.

40.    Exemplars of Defendant's products have been tested by Plaintiff's counsel.  The lab's findings concluded that the primary composition of the capsules consisted of Glucosamine Hydrochloride and Potassium Sulfate. The analysis found no trace of Glucosamine Sulfate, contrary to the claims on the product label.

41.    Plaintiff suffered damage and detriment as a result of Defendant's misrepresentations. Plaintiff purchased Solimo Glucosamine Sulfate, one of Defendant's Glucosamine Sulfate Products, because he believed it contained Glucosamine Sulfate. Had the product label truthfully disclosed that it did not

1  contain Glucosamine Sulfate, Plaintiff would not have been willing to pay any sum

2  of money for the product, and would not have purchased the product.

3  **VI.   CLASS ACTION ALLEGATIONS**

4

5      42.   Plaintiffs bring this action and seek to certify and maintain it as a class

6  action under Fed. R. Civ. P. 23, individually and on behalf of the following Class:

7
8           All individuals and entities in the United States who purchased
            SOLIMO Glucosamine Sulfate products within the applicable
9           statutes of limitations preceding the filing of this lawsuit. (the
            "Nationwide Class")
10

11     43.   Excluded from the Classes are: (a) Defendant and any entities in which

12  Defendant have a controlling interest; (b) Any entities in which Defendant's

13
14  officers, directors, or employees are employed and any of the legal representatives,

15  heirs, successors, or assigns of Defendant; (c) All current employees of Defendant;

16  (d)  The Judge(s) to whom this case or any transferred case is assigned and any

17
18  member of the Judges' immediate family and any other judicial officer assigned to

19  this case or any transferred case; (f) All governmental entities; (g) anyone who

20  makes a timely election to be excluded from the Class.

21
22     44.   Plaintiff similarly seeks to represent a Subclass defined as:

23          All individuals in California who purchased SOLIMO
24          Glucosamine Sulfate products within the applicable statutes of
            limitations preceding the filing of this lawsuit. (the "California
25          Subclass")

26     45.   Excluded from the Subclass are: (a) Defendant and any entities in

27  which Defendant has a controlling interest; (b) Any entities in which Defendant's
28
                                        13

officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) All current employees of Defendant; (d)  The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

46.     All Class allegations herein apply to the Class and Subclass equally.

47.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Subclass and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

48.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), and all requirements therein are met for the reasons set forth herein.

49.     The claims of all Class members derive directly from a single course of conduct by the Defendant. Defendant has and continues to engage in uniform and standardized conduct toward the Class members. Defendant does not differentiates, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class members. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other persons similarly situated pursuant under Fed. R. Civ. P. 23. This action

14

satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

50.     Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

51.     **Numerosity - Fed. R. Civ. P. 23(a)(1).** The Class and Subclass are so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Moreover, glucosamine sulfate supplements are among the most common and popular supplements, and, thus, it is believed the Class includes many thousands of members.   The numerosity requirement is, therefore, satisfied. Undoubtedly, individual joinder in this case is impracticable.

52.     **Ascertainability.**  The Class and Subclass are each ascertainable because its members can be readily identified using receipts, purchase records, business records, and other information kept by Defendant and/or third parties in the usual course of business and within their control or Plaintiff and the Class themselves.  Plaintiff anticipates providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

53.     **Commonality and Predominance - Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are several questions of law and fact common to the claims of

15

Plaintiffs and the members of the Class and Subclass. All of the members of the Class' and Subclass' claims are based upon the same facts and circumstances, i.e., the marketing and sales practices of Defendant's products. Fed. R. Civ. P. 23(a)(3), The questions of law and fact common to the members of the Class and Subclass predominate over any questions affecting only individual members of the Class and Subclass. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Class and Subclass. Common questions include, but are not limited to, the following:

a.    Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the nature of their products;

b.    Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the contents of its products;

c.    Whether Defendant unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Class and Subclass into purchasing its products;

d.    Whether Defendant engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by inducing Plaintiff and the Class and Subclass to purchase its product on terms that were knowingly misleading and

16

inaccurate;

e.      Whether Defendant's marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

f.      Whether the Affected Products were sold in containers with packaging identifying them as containing a particular dietary supplement, i.e., Glucosamine Sulfate;

g.      Whether, contrary to the product packaging, the Affected Products did not contain the dietary supplement identified on the packaging, i.e., Glucosamine Sulfate;

h.      Whether the Affected Products contained ingredients that were not disclosed on the packaging;

i.      Whether Defendant manufactured and/or sold the Affected Products;

j.      Whether a reasonable consumer would be misled or deceived by the Affected Products' packaging;

k.      Whether Defendant breached express or implied warranties;

l.      Whether Defendant had a duty to disclose the actual contents of its products prior to sale;

m.      Whether Defendant violated the applicable consumer protection statutes;

n.      Whether Defendant concealed material facts in its advertising

17

materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

o.      Whether Defendant has engaged in deceptive acts or practices in connection with the sales, marketing, and/or manufacturing of the its products;

p.      Expressly disclaiming damages under the CLRA, whether Plaintiff and the Class and Subclass are entitled to compensatory, actual, and/or statutory damages as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct; and,

q.      Whether Plaintiff and the Class and Subclass are entitled to injunctive, declaratory relief, or other equitable relief.

54.     **Typicality - Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the Class and Subclass.  The claims of the Plaintiffs and the respective Class and Subclass are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiffs and the respective Class and Subclass. Plaintiffs and all members of the Class and Subclass are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other Class and Subclass members.  Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.  Plaintiffs, like other members of the Classes, purchased one or more Affected Products that did not contain the primary ingredients listed and the packaging and that such supplements

18

were supposed to contain and/or contained ingredients that were not disclosed on the packaging or label. Plaintiffs were subject to, and were financially harmed by, a common policy and practice applied by each Defendant to the respective Class members.

55.     **Adequacy - Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate Class and Subclass representatives because Plaintiffs have retained counsel competent and experienced in complex class action litigation; neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclass;  Plaintiffs are knowledgeable about the subject matter of this action and will assist counsel to vigorously prosecute this litigation and has or can acquire adequate financial resources to assure that the interests of the Class and Subclass will not be harmed.  The interests of the members of Class and Subclass will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.  As such, Plaintiffs meets the adequacy requirement.

56.     **Superiority - Fed. R. Civ. P. 23(b)(3).** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if members of the Class and Subclass themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions,

19

individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single uniform adjudication, economy of scale, and comprehensive supervision by a single court. The prosecution of separate actions by the individual members of the Class and Subclass would create a risk of inconsistent or varying adjudication with respect to individual members of the Class. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class and Subclass not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

57. **Policies Generally Applicable to the Class and Subclass. Fed. R. Civ. P. 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendant's practices challenged herein apply

20

to and affect the members of the Class and Subclass uniformly, and Plaintiffs' challenge of those practices hinge on Defendant's conduct with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiffs.

58. **Injunctive and Declaratory Relief is Appropriate - Fed. R. Civ. P. 23(b)(1).** Defendant has acted, or refused to act on, grounds generally applicable to the Class and Subclass, thereby making appropriate final and injunctive relief with respect to the members of the Class and Subclass as a whole.

59. **Certification of Particular Issues. Fed. R. Civ. P. 23(c)(4).** Issue certification is also appropriate with respect to any or all of the common issues identified herein.

60. **Notice to Class:** Plaintiff anticipates notice being effectuated using primarily direct electronic means, based upon customer identification and contact information contained in Defendant's business records and databases, to be supplemented with a targeted online notice campaign. Plaintiff will engage the services of a specialist with class action notice campaigns and reserves the right to supplement this intended approach as circumstances dictate, per their guidance.

**VII.   TOLLING OF STATUTE OF LIMITATIONS**

61. Any applicable statute of limitations has been tolled by the Defendant's knowing and active concealment of its deceptive practices. Plaintiffs and members of the Class could not have reasonably discovered the true extent of the Defendant's deception with regard to the Affected Products, until very recently.

21

62.     As a result of the active concealment by the Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VII.   CAUSES OF ACTION

### COUNT I
### BREACH OF WARRANTY UNDER THE MAGNUSON MOSS WARRANTY ACT
### (On Behalf of Plaintiff and the Class)

63.     Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing allegations of this Class Action Complaint as if fully set forth herein.

64.     The advertisements, models and samples, and other similar uniform representations disseminated by Defendant about its Glucosamine Sulfate products were, and are, affirmations of fact and/or promises with regard to the performance and quality of those products, including an affirmation that the product will be consistent with its core description.  These advertisements, models and samples, and other similar representations, formed, in whole or in part, the basis of the bargain as between Defendant and members of the Class, and constituted express warranties that the products would conform thereto.  As described above, Class members' products did not conform to these warranties, representations, models and samples.

65.     Sears breached these express representations and implied warranties

22

as described herein.

66.    Defendant's conduct as described herein violates the Magnuson Moss Warranty Act ("Magnuson Moss Act"), 15 U.S.C. §§2304-2312.

67.    Plaintiff purchased Glucosamine Sulfate products manufactured, marketed and sold by Defendant.

68.    Defendant breached the essential terms of its express warranties by charging Plaintiff and members of the Class without providing the product promised, as set forth herein.

69.    Plaintiff and members of the Class have products that are not worth what they paid for them and have otherwise sustained damages as a direct and proximate result of Defendant's breach of the agreement.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (California Business & Professions Code §§ 17200, *et seq.*)
### (On Behalf of Plaintiff and the Class)

70.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

71.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

72.    Defendant's unlawful, unfair, and/or fraudulent business acts and

23

CLASS ACTION COMPLAINT
Case No.:

practices, as described herein, were and are in violation of the UCL. Defendant's conduct violates the UCL in the following ways:

    a. By knowingly and intentionally concealing from Plaintiff and the other members of the Class material information concerning its product contents as set forth above;

    b. By violating the FTC;

    c. By breaching the terms of the Contract or other agreement;

    d. By violating other California laws, including Cal. Bus. & Prof. Code § 17500, *et seq*., and Cal. Corp. Code § 25000, *et seq*. (described below); and/or

    e. Violating other statutory law.

73.    Defendant's omissions alleged herein caused Plaintiff and the other Class members to purchase the Glucosamine Sulfate products.  Had they been aware of the information omitted by Defendant, Plaintiff and the other Class members would not have purchased Defendant's products or would have purchased them only at a reduced price.

74.    Defendant's practice is also immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits.

75.    Accordingly, Plaintiff and the Class members have suffered injury in fact, including lost money as a result of Defendant's unlawful, unfair, and fraudulent business acts and/or practices.

24

76.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, under Cal. Bus. & Prof. Code § 17200.

77.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT III
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.
### (On Behalf of Plaintiff and the Class)

78.    Plaintiff hereby restates and incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

79.    This cause of action is brought pursuant to Civil Code § 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class as defined herein.

80.    Defendant is a "person" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

81.    Plaintiff and members of the proposed Class are "consumers" within the meaning of Cal Civ. Code §§ 1761(d) and 1770.

82.    Defendant's Glucosamine Sulfate products are "goods" or "services"

CLASS ACTION COMPLAINT
Case No.:

as defined by Cal. Civ. Code § 1761(a).

83.    As described above, Defendant violated the CLRA in at least the following respects:

  a.  in violation of § 1770(a)(5), by representing that their "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have";

  b.  in violation of § 1770(a)(6), by representing that Defendant's "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

  c.  in violation of § 1770(a)(9), by "advertising goods or services with intent not to sell them as advertised";

  d.  in violation of § 1770(a)(16), by "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not";

  e.  for other such violations of the CLRA that discovery will uncover.

84.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and Defendant was wanton and malicious in its concealment of the same.

85.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions in the marketing and advertisement of the Glucosamine Sulfate.

26

86.    Defendant's unfair or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by Defendant in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

87.    As a direct and proximate result of Defendant's violations of law, Plaintiff and the Class have been injured.

88.    Contemporaneous with the filing of this Complaint, Plaintiff will send Defendant a CLRA notification and demand letter via certified mail, return receipt requested.

89.    The notice letter will set forth the relevant facts and notifies each Defendant of its CLRA violations, and request that each Defendant promptly remedy those violations.

90.    Under the CLRA, a plaintiff may, without prior notification, file a complaint alleging violations of the CLRA that seeks injunctive relief *only*. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the Plaintiff may amend his CLRA causes of action without leave of court to add claims for damages.

91.    At this time, Plaintiff expressly disclaims any and all damages under CLRA.  Plaintiff, individually and on behalf of the class, will amend this complaint to add damages claims if Defendant do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

27

92.     Under the CLRA, Plaintiff are entitled to a permanent injunction prohibiting practices that violate the CLRA. Plaintiffs, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

93.     Defendant's practices, acts and courses of conduct in connection with the sale of its Glucosamine Sulfate products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

94.     Plaintiff and the Class reasonably believed and/or depended on the materially false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's products.

95.     By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

96.     Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against Defendant under the CLRA for injunctive and equitable relief *only* to enjoin the practices described herein.

97.     Plaintiff, individually and as a member of the Class, has no adequate

28

remedy at law for the future unlawful acts, methods, or practices as set forth above.

98.   Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

99.   In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

100.   Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

## COUNT IV
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (California Business & Professions Code §§ 17500, *et seq.*)
### (On Behalf of Plaintiff and the Class)

101.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

102.   Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

103.   Defendant caused to be made or disseminated throughout the United States, through advertising, marketing and other publications, statements, including

29

statements included in its general advertising and on its website that omitted material information from consumers and members of the Class.

104.   Defendant knew or should have known through the exercise of reasonable care that the omitted information was material to consumers, including Plaintiff and the other Class members.

105.   Defendant has violated Cal. Bus. & Prof. Code § 17500 because their representations and omissions regarding the Glucosamine Sulfate products were material and likely to deceive a reasonable consumer.

106.   Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. By purchasing the Glucosamine Sulfate products, Plaintiff and the other Class members relied on the representations by Defendant from which Defendant misrepresented and/or omitted material information as described herein.  Had Plaintiff and the other Class members been aware of the incorrect and/or omitted information, they would not have purchased the Glucosamine Sulfate products or would have paid less for them. Plaintiff and other Class members bestowed a benefit upon Defendant but did not receive the benefit of their bargain.

107.   All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the state of

California and elsewhere.

108.   Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class and Subclass pray for judgment as follow:

A.     For an order certifying the proposed class, appointing Plaintiff and Plaintiff's counsel to represent the proposed Class and Subclass, appointing counsel for Plaintiff as lead counsel for the Class and Subclass;

B.     An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and/or unfair business practices alleged in this Complaint;

C.     Appropriate injunctive relief;

D.     Expressly disclaiming any and all damages under Civil Code § 1750, *et seq*., "the CLRA", for an order awarding restitution, disgorgement, actual damages, statutory damages, exemplary damages, treble damages, and punitive damages under applicable law, compensatory damages for economic loss,

31

1   diminished value, and out-of-pocket costs in an amount to be determined at trial;

2       E.      A declaration that Defendant is financially responsible for all Class

3   and Subclass notice and the administration of Class and Subclass relief;

4

5       F.      An order awarding any applicable statutory and civil penalties;

6       G.      An order requiring Defendant to pay both pre- and post-judgment

7   interest on any amounts awarded;

8

9       H.      An award of costs, expenses, and attorneys' fees as permitted by law;

10  and

11      I.      Such other or further relief as the Court may deem appropriate, just,

12  and proper under the circumstances.

13

14  **IX.    DEMAND FOR JURY TRIAL**

15      Plaintiff hereby demands a jury trial for all claims so triable.

16

17  DATED: <u>March 12, 2021</u>          LAW OFFICE OF FRANCIS J. FLYNN, JR.

18                      <u>  /s/ Francis J. Flynn, Jr.                    </u>
                        Francis J. "Casey" Flynn, Jr.
19                      422 South Curson Avenue
                        Los Angeles, California 90036-3169
20                      T: 314-662-2836
                        F: 1-855-710-7706
21                      E: casey@lawofficeflynn.com

22

23                      **ATTORNEYS FOR PLAINTIFFS AND THE
                        PROPOSED CLASS**

24

25

26

27

28
                                            32